Leon Z. HOLLINS, Jr., Appellant,

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellee.**

No. 97–CV–538.

District of Columbia Court of Appeals.

Argued Feb. 11, 1999.

Decided Oct. 12, 2000.

Stephen Z. Chertkof, Washington, DC, with whom John W. Davis was on the brief, for appellant.

John Payton, with whom Juanita A. Crowley and Jeffrey P. Singdahlsen were on the brief, for appellee.

Before TERRY and FARRELL, Associate Judges, and ABRECHT, Associate Judge, Superior Court of the District of Columbia.*

TERRY, Associate Judge:

Appellant Leon Hollins sued his former employer, Federal National Mortgage Association ("FNMA" or "Fannie Mae"), for discrimination and retaliation under the District of Columbia Human Rights Act, D.C.Code §§ 1–2501 *et seq.* (1996) ("DCHRA").[1] In his complaint Mr. Hollins also included claims for breach of contract, wrongful discharge, and intentional infliction of emotional distress. Before discovery was complete, but after Hollins had an opportunity to substantiate his claims, the trial court granted Fannie Mae's motion for summary judgment. On appeal Mr. Hollins presents three assignments of error. First, he maintains that there was sufficient evidence of discrimination, without additional discovery, to require denial of the motion for summary judgment. Second, he contends that the court should have granted his request for broader discovery to prove his claims. Third, he argues that Fannie Mae's reliance on the report of an outside investigator amounted to an "advice of counsel" defense and that he should have been permitted some discovery to test that defense. We reject all of these arguments and affirm the judgment.

---

*\* Sitting by designation pursuant to D.C.Code § 11–707(a) (1995).*

1. The complaint also invoked Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1994), as a basis for jurisdiction. Civil actions based on the federal Act, however, are normally brought in a United States District Court under 42 U.S.C. § 2000e–5 (f)(3). *Compare* D.C.Code § 1–2556(a) (1999) (authorizing any aggrieved person to bring an action under the DCHRA "in any court of competent jurisdiction").

This court has never decided whether claims under the federal Civil Rights Act may be brought in the Superior Court, either alone or in tandem with claims under the DCHRA. We need not decide the point here, however, since the applicable law is essentially the same under both the federal and the local statutes, and our holding in this case would be no different under either statute. For the purposes of this appeal, therefore, we shall assume, without deciding, that Mr. Hollins' Title VII claim is properly before us.

## I

Fannie Mae hired Mr. Hollins in July 1992 to be the Vice President of its Human Resources Division. His duties included sharing responsibility for the enforcement of Fannie Mae's policy prohibiting sexual harassment, retaliation, and other forms of discrimination. According to Mr. Hollins, Fannie Mae hired him to improve company relations with its black employees, some of whom, before Hollins' arrival, had signed a petition complaining about the treatment they had received in the workplace. After assuming his post as Vice President, Mr. Hollins issued reports highlighting Fannie Mae's poor record of hiring minorities for senior positions. Hollins alleged that his activities advocating for minority employees often brought him into conflict with Fannie Mae's senior management, including Lawrence Small, Fannie Mae's president, and Douglas Bibby, the Senior Vice President for Administration and Hollins' immediate supervisor.

In January 1995 Fannie Mae received a complaint from Mr. Hollins' executive assistant, Gabrielle Barry, alleging that Hollins had sexually harassed her. Fannie Mae hired the law firm of Robins, Kaplan, Miller and Ciresi ("RKM & C") to conduct an investigation, which was headed by RKM & C partner Sharon Cummings. The investigation concluded that Mr. Hollins had violated Fannie Mae's policy on sexual harassment and recommended that he receive a written reprimand with a warning that future misconduct would result in severe discipline, including termination. On May 3, 1995, Fannie Mae issued a written reprimand to Mr. Hollins consistent with RKM & C's recommendation. The reprimand, which was signed by Mr. Small, set forth the investigation's conclusion that Mr. Hollins had violated Fannie Mae's sexual harassment policy. It also informed him that any future "inap-

propriate workplace conduct" would result in severe discipline, including termination. Mr. Hollins countersigned the reprimand, acknowledging that he understood and accepted its terms. He also wrote a memorandum to Mr. Small stating that, although Fannie Mae had "arrived at a fair set of conclusions based on the investigator's report," he believed that "both the investigation and the report [were] seriously flawed."

About a month and a half later, three employees complained separately to Mr. Bibby and another officer that Mr. Hollins was retaliating against them for participating in the earlier investigation. Fannie Mae again hired Ms. Cummings and RKM & C to investigate the charges and put Mr. Hollins on administrative leave while the investigation was going on. The investigation concluded that Mr. Hollins had retaliated against the three employees, in violation of company policy, and recommended that Fannie Mae terminate Mr. Hollins' employment. On August 11, 1995, in a letter written and signed by Douglas Bibby, Fannie Mae fired Mr. Hollins.

Hollins filed this suit against Fannie Mae in January of 1996, alleging discrimination based on race. In his complaint he included claims for wrongful discharge, breach of contract, and intentional infliction of emotional distress. Fannie Mae filed its answer and asserted counterclaims for breach of contract, breach of fiduciary duty, conversion, and trespass to chattels, based on Mr. Hollins' failure to respond to requests that he return all Fannie Mae documents and property under his control.[2] A few weeks later Fannie Mae filed a motion for summary judgment, to which it attached the two investigative reports and affidavits stating why Mr. Hollins had been fired. In his opposition to the motion, Mr. Hollins acknowledged that Fan-

---

2. At the time of oral argument, Fannie Mae's counterclaims were still pending before the trial court. Shortly after argument, however, Fannie Mae voluntarily dismissed them, thus providing this court with jurisdiction to enter-

tain and decide the instant appeal. See Metropolitan Baptist Church, Inc. v. Minkoff, 462 A.2d 460 (D.C.1983); Sacks v. Rothberg, 269 U.S.App.D.C. 353, 354, 845 F.2d 1098, 1099 (1988).

nie Mae had articulated a legitimate, non-discriminatory reason for his termination, and that he now had the burden to prove that Fannie Mae's justification was only a pretext.

Mr. Hollins, who is black, sought to prove pretext by showing that similarly situated white employees were less severely punished than he was, or not punished at all. He also claimed that the manner of Fannie Mae's investigation of the charges against him, *i.e.*, the use of an outside investigator, proved discrimination because it was different from the manner in which it had investigated similarly situated white employees. To the extent that evidence already in the record did not support his claims, Mr. Hollins requested additional discovery under Super. Ct. Civ. R. 56(f).

Following a hearing, the trial court entered an order directing Fannie Mae to produce relevant documents concerning three categories of its employees:

(1) . . . any officer accused of or charged with sexual harassment or a violation of FNMA policy regarding sexual misconduct . . .

(2) . . . any officer found to have violated any FNMA policy or engaged in any other misconduct which resulted in a written reprimand or other formal discipline, who was *thereafter* found to have violated any FNMA policy or engaged in any other misconduct . . . [and]

(3) . . . any other officer accused of having violated FNMA policy or engaged in any other misconduct in response to which FNMA engaged *outside* counsel or an *outside* investigator to investigate the alleged violation of company policy or other alleged misconduct. . . . [Emphasis in original.][3]

Shortly thereafter, Mr. Hollins filed another motion seeking much broader discovery before the court ruled on FNMA's motion for summary judgment, including "the broadest scope of discovery" permitted under the civil rules and "the complete panoply of discovery requested." The court denied this motion.

Fannie Mae then filed its response (with documentary support) to the court's discovery order, providing information in each of the three categories designated by the trial judge. In the first category, Fannie Mae showed that five officers, all male, had been accused of sexual harassment or sexual misconduct. Of those, three (two white and one black) were not investigated, either because the charges, even if true, did not violate FNMA policy[4] or (in the case involving the black man) because the complaining party had requested that the allegations not be investigated. The investigation of one of the two remaining officers, a white man, concluded that the allegations were unfounded. The fifth officer, also white, was found to have engaged in consensual sexual misconduct and received a written reprimand; his compensation was also reduced. In the second category, it was established that only one officer, a black man, was found to have violated FNMA policy after having been formally reprimanded for an earlier violation of company policy. That officer received a written reprimand; his compensation was also reduced, and he was transferred to another department "subject to certain conditions." Finally, in the third category, the discovery revealed that Fannie Mae had previously hired outside investigators three times to investigate

---

3. For each of the three categories, the court directed Fannie Mae to provide "appropriate detail" about several items listed in the order. In addition, if Fannie Mae failed to identify any officer (other than Mr. Hollins) whose alleged misconduct was investigated by outside counsel, it was required to "state why it chose to hire outside counsel to investigate [Hollins' alleged misconduct]."

4. One of these complaints was not formally investigated because it alleged that sexist comments were often made within the department, and at that time the FNMA policy prohibiting sexist remarks was not yet in effect. The officer in charge of the department was nevertheless counseled to end the sexist comments, and his compensation was reduced.

charges of FNMA policy violations. Outside investigators were used in two of those cases because the officers charged were in departments which "shared responsibility for investigating employee complaints." In the third instance, "the regional office lacked the ability to conduct the investigation and ... appropriate investigators from the Washington, D.C., office were not available."

After reviewing the discovery materials provided by Fannie Mae, and after considering Mr. Hollins' failure to produce any other evidence that he was treated unfairly because of his race, the trial court granted Fannie Mae's motion for summary judgment. The court also dismissed the retaliation claim, concluding that "there [was] absolutely no evidence in the record to support a contention that plaintiff's discharge was causally connected to any protected activity." Finally, it granted summary judgment on the breach of contract and wrongful discharge claims because Mr. Hollins did not have an employment contract.[5]

## II

■■■ This court reviews the grant of a motion for summary judgment *de novo*, applying the same standard as that utilized by the trial court. *Colbert v. Georgetown University*, 641 A.2d 469, 472 (D.C.1994) (en banc). We "undertake an independent review of the record" and evaluate it "in the light most favorable to the party opposing the motion ... resolv[ing] against the moving party any doubts about the existence of a material factual dispute." *Noonan v. Williams*, 686 A.2d 237, 244 (D.C.1996) (citing *Colbert*). To be entitled to summary judgment, the moving party

must "demonstrate that there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." *Colbert*, 641 A.2d at 472 (citing Super. Ct. Civ. R. 56(c)); *accord, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *O'Donnell v. Associated General Contractors of America, Inc.*, 645 A.2d 1084, 1086 (D.C. 1994). Once that burden is met, "[t]he adverse party must present evidence, via affidavit or otherwise, 'to demonstrate the existence of a genuine issue for trial.'" *Id.* (quoting *Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 25 (D.C.1991)). "Conclusory allegations by the nonmoving party are insufficient to establish a genuine issue of material fact or to defeat the entry of summary judgment." *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C.1991) (citation omitted).

■■ Although summary judgment is no longer regarded as an "extreme remedy," it nevertheless is one which should be sparingly granted in cases involving motive or intent. *See, e.g., In re Estate of Corriea*, 719 A.2d 1234, 1243 (D.C.1998); *Raskauskas*, 589 A.2d at 27; *Spellman v. American Security Bank*, 504 A.2d 1119, 1122 (D.C.1986); *Wyman v. Roesner*, 439 A.2d 516, 519 (D.C.1981); *Willis v. Cheek*, 387 A.2d 716, 719 (D.C.1978); *International Underwriters, Inc. v. Boyle*, 365 A.2d 779, 785 (D.C.1976) (citing cases); *accord, e.g., Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Attorney General v. Irish People Inc.*, 254 U.S.App.D.C. 229, 233, 796 F.2d 520, 524 (1986). Courts are justifiably hesitant to throw out employment discrimination claims on summary judgment, since they almost always involve

---

**5.** We affirm the trial court's grant of summary judgment on the claims of breach of contract and wrongful termination because Hollins did not have an employment contract, and thus he was an employee at will. "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W.*

*Cochran & Co.*, 597 A.2d 28, 30 (D.C.1991) (citations omitted). We have recognized certain limited exceptions to this rule both in *Adams* and in *Carl v. Children's Hospital*, 702 A.2d 159 (D.C.1997) (en banc), but in light of our conclusion that Mr. Hollins was not fired for either a discriminatory or a retaliatory reason, he fits none of those exceptions.

issues concerning the employer's (or supervisor's) motive or intent. "Outright admissions of impermissible racial motivation are infrequent and plaintiffs often must rely on other evidence." *Hunt v. Cromartie,* 526 U.S. 541, 119 S.Ct. 1545, 1552, 143 L.Ed.2d 731 (1999); *see also Riordan v. Kempiners,* 831 F.2d 690, 697–698 (7th Cir.1987). This case, however, presents one of the rare situations in which summary judgment in that context is appropriate. The evidence before the trial court affirmatively showed that there was no disparate treatment, and appellant failed to present any other evidence of discrimination.

 In considering claims of discrimination under the DCHRA, we employ the same three-part, burden-shifting test articulated by the Supreme Court for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., O'Donnell,* 645 A.2d at 1086; *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights,* 515 A.2d 1095, 1099 (D.C.1986). The burden is initially on the employee to make a *prima facie* showing of discrimination by a preponderance of the evidence. *Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 361 (D.C.1993); *see Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *prima facie* showing, when made, raises a rebuttable presumption that the employer's conduct amounted to unlawful discrimination. *Arthur Young,* 631 A.2d at 361.

 Once the presumption is raised, the burden shifts to the employer to rebut it by articulating "some legitimate, nondiscriminatory reason for the employment action." *Atlantic Richfield,* 515 A.2d at 1099 (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). The employer can "satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude that the employment action [was not] motivated by discriminatory animus." *Atlantic Richfield,* 515 A.2d at 1099–1100.

"The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

 Finally, "the burden shifts back to the employee to prove, again by a preponderance of the evidence, that the employer's stated justification for its action 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Arthur Young,* 631 A.2d at 361 (citation omitted). "This burden merges with the ultimate burden of persuasion on the question of intentional discrimination." *Atlantic Richfield,* 515 A.2d at 1100. The Supreme Court has clarified "that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089) (emphasis in original); *accord, e.g., Patterson v. McLean Credit Union,* 491 U.S. 164, 187, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Therefore, once the employer has met its burden of producing a legitimate, non-discriminatory reason for the termination, the presumption "drops from the case." *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. 1089. From that point onward, the employee must show *"both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center,* 509 U.S. at 515, 113 S.Ct. 2742 (emphasis in original). Thus it is not enough for the employee simply to show that the employer's proffered reason for the employment action was pretextual, although that will "often considerably assist[ ] him in doing so." *Id.* at 517, 113 S.Ct. 2742; *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, ——, 120 S.Ct. 2097, 2106, 147

L.Ed.2d 105 (2000). The employee must also prove, by a preponderance of the evidence, *"that the employer has unlawfully discriminated."* *St. Mary's,* 509 U.S. at 514, 113 S.Ct. 2742 (emphasis in original). "Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors." *Reeves,* 530 U.S. at ——, 120 S.Ct. at 2109.

To establish a *prima facie* case of discrimination, Mr. Hollins had to demonstrate (1) that he was a member of a protected class, (2) that he was qualified for the job from which he was terminated, (3) that his termination occurred despite his employment qualifications, and (4) that a substantial factor in his termination was his membership in the protected class. *See McDonnell Douglas,* 411 U.S. at 802–805, 93 S.Ct. 1817; *Blackman v. Visiting Nurses Ass'n,* 694 A.2d 865, 868 (D.C. 1997); *O'Donnell,* 645 A.2d at 1087; *Arthur Young,* 631 A.2d at 361. The first three elements of the *prima facie* showing were never contested by Fannie Mae, and we assume, as did the trial judge, that they were sufficiently established. Hollins sought to prove the fourth element, that he was terminated because of his race, by showing that "others not in the protected class were treated differently." Because Fannie Mae immediately proffered a legitimate explanation for Hollins' termination, the court assumed, without deciding, that Hollins had satisfied the fourth prong and established a *prima facie* case. We do likewise, but hold as a matter of law that Hollins failed to show that the reason was pretextual and that his discharge was the product of unlawful discrimination.

Before the completion of discovery, Fannie Mae moved for summary judgment. Attached to the motion were the reports produced by outside counsel, along with an affidavit from Mr. Small which stated that the decision to discipline Hollins and then to terminate him were "consistent with" the findings and recommendations of those reports.[6] In his response, Hollins conceded that Fannie Mae had met its burden of production and that the burden had shifted back to him to prove pretext. Mr. Hollins now asserts, however, contrary to the position he took in the trial court, that the reports do not meet Fannie Mae's burden of production because they are double and triple hearsay and therefore inadmissible.

Ordinarily, arguments not made in the trial court are deemed waived on appeal. *See, e.g., District of Columbia v. Califano,* 647 A.2d 761, 765 (D.C.1994); *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967). Moreover, "[w]e have repeatedly held that a [litigant] may not take one position at trial and a contradictory position on appeal." *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993) (citations omitted). We see no reason why these basic principles should not apply to Hollins' hearsay argument. In any event, the hearsay claim is without merit. The reports were not offered for the truth of what was asserted in them, but rather to show that Fannie Mae relied on them; therefore, they were not hearsay. *See Carter v. United States,* 614 A.2d 542, 545 n. 9 (D.C. 1992); *Taylor v. United States,* 603 A.2d 451, 461 (D.C.), *cert. denied,* 506 U.S. 852, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992).

**6.** Mr. Hollins makes much ado about Mr. Small's use of the phrase "consistent with" as opposed to "in reliance on" or some other phrase indicating that Fannie Mae actually relied on the reports to make its decision. The distinction is trivial and is not sufficient to raise a genuine issue of fact on the question of pretext. Nevertheless, the argument illustrates Mr. Hollins' misunderstanding about Fannie Mae's burden of production. Fannie Mae need not prove by a preponderance of the evidence that it relied on the reports. *See Atlantic Richfield,* 515 A.2d at 1099. It must simply produce "admissible evidence from which the trier of fact could rationally conclude that the employment action [was not] motivated by discriminatory animus." *Id.* at 1100.

Since Fannie Mae presented a legitimate, non-discriminatory reason for terminating Mr. Hollins, the burden shifted to him to establish that the reports were a pretext for discrimination "either directly by [proving] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. Furthermore, as we have pointed out, this burden merged with Hollins' "ultimate burden of persuasion on the question of intentional discrimination." *Atlantic Richfield,* 515 A.2d at 1100; *see St. Mary's Honor Center,* 509 U.S. at 507, 113 S.Ct. 2742. Thus Hollins needed to present evidence showing not only that the investigation and reports were a pretext for terminating him but also that they were a pretext for terminating him *because of his race, i.e.,* that race was the real motivating factor. *See id.* at 515, 113 S.Ct. 2742.

To prove pretext in the context of this case, Hollins must establish that Fannie Mae did not rely in good faith on the findings and recommendations of the two independent investigations. This he seeks to do both directly, by showing that Fannie Mae did not actually rely on the reports in making the decision to fire him, and indirectly, by showing that discrimination was the more likely reason for his discharge. As direct evidence that the investigations and reports were a pretext for discrimination, Hollins relies on statements allegedly made by Douglas Bibby after he (Hollins) was put on administrative leave but before the investigation was complete. According to the affidavit of Jeffrey Stoner, a former FNMA Director of Career Development, Mr. Bibby made several comments that Hollins had "some disturbing character flaws, was manipulative and had a very 'dark' side that others found disturbing and abusive." Stoner further stated that shortly after Hollins was placed on leave, "Bibby came into my office and stated that he was certain Leon [Hollins] would not be returning to Fannie Mae and wanted to make it clear to me that Leon was not coming back." Mr. Hollins suggests that, because Mr. Bibby eventually wrote the letter terminating his employment, Bibby had made the decision to fire him before the report was completed, and the report was merely a pretext for that decision. Even assuming that Bibby made the statements, however, they do not demonstrate pretext. For one thing, it does not appear that Mr. Bibby had the power to fire Mr. Hollins, since he also told Stoner that he would have fired Hollins when he learned the results of the first investigation. Furthermore, Hollins presented no evidence that Mr. Bibby participated in hiring the outside investigator or otherwise took part in the investigation. One could speculate, of course, that Fannie Mae had by that time already decided to terminate Hollins, and that Mr. Bibby was simply communicating that decision to Stoner. However, there is no evidence in the record to support any such speculation.

Mr. Hollins also attempts to prove pretext directly by attacking the reliability of the investigations. He criticizes the methodology of the investigators and claims that the findings of misconduct were incorrectly based on the investigations' deficiencies. He claims that Fannie Mae was aware of these shortcomings, and that therefore Fannie Mae could not have relied on the investigations in good faith.[7] Even assuming *arguendo* that the

---

7. As evidence of the unreliability of the investigations, Hollins relies on (1) a memorandum he sent to Fannie Mae following receipt of the written reprimand in which he communicated his belief "that both the investigation and the report are seriously flawed"; (2) Mr. Stoner's conclusions that only "marginal performers" were interviewed when the investigation was conducted; and (3) some indication that an employee named Shandell Harris was asked "to lie in support of its efforts to build a case against Mr. Hollins." Hollins bases his characterization of Ms. Harris' proposed testimony on an EEO complaint she filed in which she alleged that Fannie Mae retaliated against her because she "did not agree with the accu-

investigations were flawed, the reliability of the investigations and reports is irrelevant. The only questions pertinent here are whether Fannie Mae believed, in good faith, that Hollins had committed the violations of its sexual harassment and retaliation policies as alleged by the other employees, and whether its decision to discharge Hollins was based on that belief. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991); *Crimm v. Missouri Pacific R.R.*, 750 F.2d 703, 712 (8th Cir.1984); *Johnson v. J.C. Penney Co.*, 876 F.Supp. 135, 139 (N.D.Tex.1995); *accord, RAP, Inc. v. District of Columbia Comm'n on Human Rights*, 485 A.2d 173, 179 n. 4 (D.C.1984) (citing cases). Hollins presented no evidence whatever on either of those questions. Neither his letter questioning the reliability of the findings nor Stoner's assessment of the investigations raised any issue regarding Fannie Mae's reliance on the investigators' reports. Furthermore, there was absolutely no evidence, or even a hint—other than Hollins' speculation—that Fannie Mae colluded with RKM & C or Ms. Cummings to fabricate the allegations or the reports' conclusions. Thus there was no direct evidence of pretext.

But even if there were, it would still not be sufficient to get Hollins beyond summary judgment without some evidence from which one could justifiably infer that discrimination was the more likely reason for his termination. *See St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. 2742. On the other hand, even without direct evidence of pretext, Hollins could still survive summary judgment if he could prove pretext indirectly by showing that discrimination was more likely to have been the

motivation for his discharge, and thus that the reports were merely a pretext.[8] However, there was no evidence at all, either direct or indirect, that Hollins' discharge was motivated by discrimination.

██ For the first time on appeal, Hollins asserts that a statement made by Lawrence Small, Fannie Mae's president, constitutes direct evidence of discrimination. According to Stoner's affidavit, a meeting took place in March 1993 attended by Small, Hollins, Stoner, and another FNMA Vice President named Maria Johnson. In the course of that meeting, Stoner said, Small remarked that a certain type of mispronunciation

> represents one of the "fatal flaws of blacks." There was a moment of silence followed by nervous laughter. Larry Small expanded on the point briefly, and then we moved on to the next topic. I was shocked and disappointed that [Small] would make such a statement.

Though we ordinarily do not consider issues raised for the first time on appeal, we nonetheless address Small's statement here because our discussion also bears on Hollins' other argument that certain statements made by other Fannie Mae employees were also evidence of discrimination, a claim which he did raise below.

██ In *EEOC v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir.1990), the court held that the *McDonnell Douglas* test "is to be applied in cases where circumstantial evidence is the only proof of discrimination. When a plaintiff proves a case of discrimination by direct evidence, application of *McDonnell Douglas* is inappropriate." *Id.* at 923. Rather, cases in-

---

sations [against Hollins] and complained to Jeffrey Stoner ... that [she] believed it was discrimination based on race." She never said, however, that she was asked to lie.

Hollins also questions the reliability of the investigations because RKM & C and Ms. Cummings represented Fannie Mae in another employment discrimination case. That case, however, was not filed until after the second investigation had begun. Moreover,

Hollins does not explain how representation in another case would make either the law firm or the lawyer biased.

8. In fact, that is precisely what Hollins originally intended to do. In his opposition to the motion for summary judgment, Hollins stated that "[p]art of the proof upon which Plaintiff relies to show pretext is also the proof he uses to show his *prima facie* case."

volving direct evidence of discrimination are analyzed under the "mixed motives" analysis articulated by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which requires the plaintiff to show that discrimination "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2 (m). In other words, the plaintiff "must present evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the factfinder to infer that *that attitude was more likely than not a motivating factor in the employer's decision to terminate*." *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 471 (8th Cir. 1995) (emphasis added), cited with approval in *Blackman*, 694 A.2d at 869; *accord, Browning v. President Riverboat Casino–Missouri, Inc.*, 139 F.3d 631, 634 (8th Cir. 1998); *Wilson v. Susquehanna Township Police Dep't*, 55 F.3d 126, 130 (3d Cir. 1995). "[A] racial slur uttered by the person in charge of making employee evaluations and rehiring suggestions constitute[s] direct evidence of discrimination." *Alton Packaging*, 901 F.2d at 924.

■■■ A plaintiff who claims to have direct evidence of discrimination sufficient to warrant treatment under *Price Waterhouse* faces a heavy burden. "Not all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision." *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir.1993). In particular, "stray remarks in the workplace," "statements by nondecisionmakers," and even "statements by decisionmakers unrelated to the decisional process itself" are not direct evidence of discrimination and thus cannot satisfy the plaintiff's burden, *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring),

"because they are either too remote in time or too attenuated because they were not directed at the plaintiff." *Ross v. Rhodes Furniture Inc.*, 146 F.3d 1286, 1291 (11th Cir.1998). "Absent a causal link between the references and the conduct complained of, such epithets become stray remarks that cannot support a discrimination verdict." *Boyd v. State Farm Insurance Cos.*, 158 F.3d 326, 330 (5th Cir.1998), *cert. denied*, 526 U.S. 1051, 119 S.Ct. 1357, 143 L.Ed.2d 518 (1999); *accord, e.g., Rivers–Frison v. Southeast Missouri Community Treatment Center*, 133 F.3d 616, 619 (8th Cir. 1998).

■■■ Assuming that Stoner's affidavit is correct, such a statement by Mr. Small would almost certainly reflect racial prejudice. Nevertheless, though it would be not only unfortunate but quite disturbing, such a comment would not rise to the level of direct evidence of discrimination. "Inappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace" do not have any relationship to the employment action. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir.1999); *see also Neuren v. Adduci, Mastriani, Meeks & Schill*, 310 U.S.App. D.C. 82, 88, 43 F.3d 1507, 1513 (1995) (supervisor's reference to female employee as a "bitch" in written evaluation, viewed in context, did not constitute direct evidence of gender discrimination). While Mr. Small was one of the persons involved in the discipline and possibly the termination of Mr. Hollins, the comment was made *almost two and a half years* before Hollins was fired and was not specifically directed at him.[9] *See Simmons v. Oce-USA, Inc.*, 174 F.3d 913, 916 (8th Cir.1999) (affirming summary judgment when plaintiff failed to establish a causal link between termination and racial slurs and jokes made two years earlier); *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir.1999) (affirming summary

9. It was, in fact, triggered by Ms. Johnson's erroneous pronunciation of a word.

judgment when discriminatory comments were made two years before termination). There is no legally cognizable connection between Small's comment and the alleged discriminatory animus which Hollins claims resulted in his termination. Similarly, Mr. Stoner's affidavit, though providing circumstantial evidence of a discriminatory attitude on the part of Mr. Small, is not "direct [proof] that the employer acted with discriminatory motive," *Alton Packaging*, 901 F.2d at 923, and therefore is not sufficient to defeat Fannie Mae's motion for summary judgment.

■■■ Hollins likewise fails to show any link between the racial comments that others heard while employed at Fannie Mae and his termination. One cannot infer from those comments that discrimination was a factor in Hollins' discharge, since they were not directed at him and were not made by decision-makers in a context related to the decision-making process. Therefore, even assuming that they constitute some evidence of discrimination, they do not get Hollins over the "high hurdle" of establishing a "mixed motives" claim. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 513 (3d Cir.1997), *cert. denied*, 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998).

■■■ Finally, Hollins attempts to show that the reports were a pretext by proving disparate treatment. "Here, in order to establish a *prima facie* case of [racial] discrimination in the decision to terminate, appellant had to come forward with evidence that [he] was fired from a job for which [he] was qualified while [white employees], similarly situated to [him], were not terminated, but rather treated more leniently." *O'Donnell*, 645 A.2d at 1086. The documentation produced by Fannie Mae pursuant to the court's order provided no evidence that Hollins was treated in any way differently from his peers within the company. To the contrary, the evidence demonstrated that in Hollins' case the Fannie Mae executives followed the procedures they had used in the past, and

thus that they treated Hollins fairly, regardless of what really may have been in their minds.

The only other Fannie Mae officer (a white man identified as "Officer C") who was found to have violated Fannie Mae's policy against sexual harassment received a written reprimand and reduced compensation, whereas Hollins received only a written reprimand—a lesser punishment. Similarly, only one other officer (a black man identified as "Officer N") was found to have violated FNMA policy after he had been disciplined for a previous violation. He was transferred to another department and received a written reprimand and reduced compensation. Although his discipline was not as great as that received by Hollins, he was also a member of the protected class; thus Hollins cannot rely on what happened to Officer N to show that his own termination was racially motivated. Neither Officer C's case nor Officer N's case supports his assertion of disparate treatment.

Nor did discovery reveal anything suspicious about the use of outside counsel to investigate the two complaints against Hollins. Of the three other instances in which Fannie Mae hired outside counsel to conduct investigations of employee misconduct, two of them involved officers from departments which were responsible for enforcing Fannie Mae's anti-discrimination policies. Because Mr. Hollins was the Vice President of the Human Resources Division, charged with enforcing those same policies, it was entirely reasonable—and consistent with prior practice—for FNMA to hire an outside investigator to look into charges against Hollins as well. The only other instance in which an outside investigator was used was at a branch office where there was no one qualified to conduct such an investigation.

For all of these reasons, we conclude that Mr. Hollins failed to offer sufficient evidence to prove either directly or indirectly, as he must under *McDonnell Doug-*

*las* and *St. Mary's Honor Center,* that his discharge was the product of unlawful discrimination rather than his own misconduct.

### III

■■ Having apparently recognized the shortcomings of his case, Hollins contends that he should have been granted additional discovery before the court ruled on Fannie Mae's motion for summary judgment. Although he maintains that he was entitled to the "full panoply of discovery," Hollins sought—and was entitled to receive—only the discovery provided by Rule 56(f), which reads:

> Should it appear from the affidavits of a party opposing [a] motion [for summary judgment] that the party cannot *for reasons stated* present by affidavit facts essential to justify the party's opposition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. [Emphasis added].

Rule 56(f) is designed to deal with premature summary judgment motions by allowing courts to deny such motions, or to defer ruling on them, until the non-moving party has an opportunity to conduct further discovery. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (discussing FED. R.CIV.P. 56).[10] However, the rule "provides for comparatively limited discovery for the purpose of showing facts sufficient to withstand a summary judgment motion, [unlike] Rule 26, which provides for broad pretrial discovery." *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 265, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see, e.g., Willmar Poultry Co. v. Morton–Norwich Products,* 520 F.2d 289, 297 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976). A court may deny a motion for summary judgment in order to allow further discovery under Rule 56(f) only if "the party opposing the motion adequately explains why … it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control & Disarmament Agency,* 275 U.S.App.D.C. 37, 39, 864 F.2d 859, 861 (1989) (citations omitted). We are satisfied that the trial court did all that it was required to do under Rule 56(f).

■■ In his initial request for additional discovery under Rule 56(f), Hollins asked that he be allowed to "complete discovery, in order to show conclusively that Fannie Mae has not disciplined white employees with the severity it has disciplined Plaintiff…." Since that request satisfied the explanation requirement of Rule 56(f), the court properly withheld its ruling on the summary judgment motion so as to provide Hollins an opportunity to substantiate his disparate treatment claims. However, as envisioned by the rule, the court limited Hollins' discovery to evidence regarding similarly situated individuals, since that was all that he sought through additional discovery. *See, e.g., Paquin v. Federal Nat'l Mortgage Ass'n,* 326 U.S.App.D.C. 224, 229–230, 119 F.3d 23, 28–29 (1997) (limiting discovery under Rule 56(f) to specific documents for specific years). Thereafter Hollins filed a motion for reconsideration, requesting "the broadest scope of discovery" so that he could prove discrimination. The trial court properly denied that request because it "fell far short of offering specific reasons *why,* absent discovery, [Hollins] was incapable of contesting summary judgment…." *James Madison, Ltd. v. Ludwig,* 317 U.S.App.D.C. 281, 292, 82 F.3d 1085, 1096 (1996) (emphasis added), *cert. denied,* 519 U.S. 1077, 117 S.Ct. 737, 136

---

10. Because Super. Ct. Civ. R. 56 is identical to the federal rule, "we may look to federal court decisions interpreting the federal rule 'as persuasive authority in interpreting [the local rule].'" *Goldkind v. Snider Brothers, Inc.,* 467 A.2d 468, 472 (D.C.1983) (citation omitted).

L.Ed.2d 676 (1997); *see Strang,* 275 U.S.App.D.C. at 39, 864 F.2d at 861 (explanation requirement not satisfied by general statements that discovery "would be invaluable in this case" and would give plaintiff "an opportunity to test and elaborate the affidavit testimony already entered"). Having failed to provide the court with a sufficient explanation of why he could not adequately respond to Fannie Mae's summary judgment motion without it, Hollins was not entitled to any discovery beyond that authorized by the court's order.

Hollins also challenges the scope of the discovery afforded by the court, arguing that it was too narrow because it was limited to "identically situated" rather than "similarly situated" individuals. He claims that Fannie Mae employed "pay bands" for compensation purposes and that those should have been used to determine which employees were similar in rank, thereby including some supervisors in the group of similarly situated persons. He also asserts that Fannie Mae has other policies which, if violated, can serve as a basis for termination. He argues that he should have been granted discovery as to how violations (or alleged violations) of those policies were handled.

■■■■ An employee is considered similarly situated to the plaintiff for the purpose of showing disparate treatment when "all of the relevant aspects" of the plaintiff's employment situation are "nearly identical" to those of the other employee. *See Neuren,* 310 U.S.App.D.C. at 89, 43 F.3d at 1514 (citation omitted). "The similarity between the plaintiff and the other employee must exist in all relevant aspects of their respective employment circumstances," *Payne v. Illinois Central Gulf R.R.,* 665 F.Supp. 1308, 1333 (W.D.Tenn.1987) (citations omitted), which would surely include both their rank in the company and the alleged misconduct. Thus, to be similarly situated, the plaintiff and the other employee must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992).

■■■ The discovery which the trial court allowed under Rule 56(f) was limited to (1) officers accused of sexual misconduct, (2) officers found to have violated any FNMA policy or engaged in misconduct more than once, and (3) officers accused of having violated any FNMA policy who were investigated by outside counsel. As Vice President of the Human Resources Division, Hollins was an officer. His assertion that other supervisors (*i.e.,* non-officers) should be included in the class of similarly situated individuals is unpersuasive. *See O'Donnell,* 645 A.2d at 1088 (class of similarly situated employees consists of those with comparable qualifications and duties). An officer has different responsibilities from a mere supervisor, and a different standard of conduct is expected of him, especially when that officer is responsible for enforcing the very policies which he is alleged to have violated. Moreover, the way in which allegations of other types of policy violations are handled is not relevant to how Fannie Mae handles sexual harassment charges. Fannie Mae (or any employer) may appropriately choose to make sexual harassment policies a priority and to punish violations of them more severely, even if other violations of other policies may be punished in an equally severe manner from time to time. Likewise, how Fannie Mae may have disciplined any other officer for a single violation of one of its employment policies is not relevant to how it deals with repeat offenders, such as Mr. Hollins. We are therefore not persuaded that the category of similarly situated employees must include supervisors as well as officers.

■■■ Finally, Hollins claims that the discovery was too narrow because he was not able to obtain statistical evidence and "third-party" evidence to prove discrimina-

tion in his case. "As with any circumstantial evidence, the usefulness of statistical evidence 'depends on all of the surrounding facts and circumstances.'" *Davis v. Califano,* 198 U.S.App.D.C. 224, 229, 613 F.2d 957, 962 (1979) (citation omitted). In a case such as this one, statistics can prove little or nothing. While statistical evidence might be sufficient to show pretext and establish a *prima facie* case of discriminatory intent in hiring or promotion cases, *see McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. 1817 (refusal to rehire); *Davis v. Califano,* 198 U.S.App.D.C. at 229, 613 F.2d at 962 (promotion), it is not sufficient here. Fannie Mae produced evidence that it fired Mr. Hollins because it found that he had sexually harassed his secretary and then retaliated against employees who participated in the investigation of the harassment charge. In such circumstances, statistics alone cannot suffice to prove that Fannie Mae's motives were more likely to have been discriminatory; Hollins must make some additional showing that Fannie Mae's reliance on the reports was pretextual. Since he failed to do that, the trial court correctly precluded discovery of statistical evidence.[11]

■ "[D]ecisions regarding the scope and the conduct of discovery will be reversed only upon a showing of abuse of discretion." *Dalo v. Kivitz,* 596 A.2d 35, 36 n. 1 (D.C.1991). On the present record, we find no such abuse.

## IV

■ Hollins also alleged that Fannie Mae terminated his employment in retaliation for his publishing reports about Fannie Mae's promotion practices, in violation of both federal and local law. To establish a *prima facie* case of retaliation, Hollins must demonstrate (1) that he was engaged in statutorily protected activity, (2) that Fannie Mae took an adverse action against him, and (3) that there was a causal relationship between the protected activity and the adverse action. *See Howard University v. Green,* 652 A.2d 41, 45 (D.C. 1994); *Arthur Young,* 631 A.2d at 368. "The causal connection ... may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige,* 245 U.S.App.D.C. 60, 66, 759 F.2d 80, 86 (1985) (footnote omitted), cited in *Arthur Young,* 631 A.2d at 368. Assuming *arguendo* that Hollins could establish the first two elements—though we are not convinced that his publication of the reports amounted to a protected activity under either the DCHRA or Title VII—there is no evidence in the record, apart from Hollins' conclusory statements in an affidavit, that there was any connection between the publication of the reports and the discharge. Hollins merely alleged that Fannie Mae disciplined and terminated him because he had published reports challenging Fannie Mae's promotion practices. He failed to establish when those reports were published (*i.e.,* failed to show that he was fired "shortly after" their publication, as the case law requires), nor did he suggest how they might otherwise be related to his termination. There was, in other words, no evidence that Fannie Mae's reliance on the RKM & C investigation was a pretext for retaliation. The retaliation claim was properly dismissed.

## V

We reiterate that summary judgment is rarely appropriate in a case involving motive or intent; nevertheless, this is one of those rare cases. The record makes clear that Hollins was fired not because of his

---

11. Hollins characterizes Fannie Mae's reliance on the reports as an "advice of counsel" defense and argues that he should have been allowed to test that defense. We disagree. Fannie Mae hired the law firm to investigate violations of its own policies, not federal law. The reports were based on the findings of that investigation. In any event, because this issue was not raised below, we hold that it was waived. *Miller v. Avirom, supra.*

race, but because of his conduct in the workplace. The evidence not only showed no disparate treatment but demonstrated that Fannie Mae treated Hollins fairly by following the same procedures it had used in dealing with other similarly situated employees. Furthermore, since the discovery available under Rule 56(f) is more limited than Rule 26 discovery, Hollins was not entitled to any broader discovery than the court gave him. Hollins' remaining claims are meritless. The judgment is

*Affirmed.*