*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0418

THE BURRELLO GROUP, LLC, and JOSE BURRELLO, APPELLANTS,

v.

DISTRICT OF COLUMBIA, APPELLEE.

On Appeal from the Superior Court
of the District of Columbia
(2020-CA-002870-B)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued June 14, 2023                    Decided October 19, 2023)

*Eric J. Menhart* for appellants.

*Marcella Coburn*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellee.

*Alec Sandler*, with whom *Jonathan H. Levy* was on the brief, for Legal Aid of the District of Columbia as amicus curiae in support of appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*:  The District of Columbia sued Jose Burrello and

The Burrello Group, LLC (hereinafter often referred to collectively as Burrello),

alleging numerous violations of the D.C. Human Rights Act, D.C. Code § 2-1401.01 et seq. ("DCHRA"). The trial court granted summary judgment to the District on nine counts alleging that Burrello posted advertisements that unlawfully indicated a preference based on prospective renters' source of income. D.C. Code § 2-1402.21(a)(5). The trial court subsequently issued an order enjoining future discriminatory practices, requiring Burrello to take certain actions to ensure future compliance with the DCHRA, imposing a civil penalty, awarding attorney's fees to the District, and closing the case. We affirm.

## I. Factual and Procedural Background

Except as noted, the following facts appear to be undisputed for present purposes. Mr. Burrello founded The Burrello Group in 2009, and he is the sole real-estate broker there. Burrello leases residential real estate, and Mr. Burrello maintains licenses as a real-estate broker in the District, Virginia, and Maryland. He has held his license in the District for over twenty years. To satisfy licensing requirements, Mr. Burrello has on many occasions participated in fair-housing training, including training about discriminatory advertising.

Burrello owned a building in the District with two rental units. In September 2019, Burrello advertised for tenants on at least nine different websites. On at least three of the websites, the advertisements remained posted for 158 days each. On each website, the advertisement stated that the property was "[n]ot approved for

vouchers," an apparent reference to a housing-voucher program administered by the District and funded by the federal government to help low-income families pay for privately owned rental housing. D.C. Code § 6-228; 42 U.S.C. § 1437f.

In a deposition, Mr. Burrello explained that he included the language at issue in an effort to inform prospective tenants that he and the property had not "gone through the process" to be approved for housing vouchers. When individuals inquired whether the property had been "approved for vouchers," Mr. Burrello would tell them "no." Mr. Burrello had never gone through the process of renting under the voucher program. He acknowledged that the advertisements and his statements to prospective renters were "incorrect" or "wrong."

The District filed a complaint against Burrello alleging numerous violations of the DCHRA, including discriminatory advertisement on the basis of source of income, disparate impact based on race, and acts of discrimination by a real-estate salesperson. The District moved for partial summary judgment on liability for the source-of-income discrimination claims. The trial court initially denied that motion, concluding that a reasonable jury might find that Burrello did not subjectively intend to discriminate against voucher holders.

The District moved for reconsideration, arguing that Burrello's subjective intent was irrelevant because the advertisements were facially discriminatory. On

reconsideration, the trial court granted partial summary judgment to the District, concluding as a matter of law that the advertisements were facially discriminatory.

The trial court thereafter issued an order providing the following remedies: an injunction prohibiting Burrello from committing future violations of the DCHRA and imposing various training and reporting requirements; a civil penalty of $158,000—$1,000 for each day the advertisement remained online; and approximately $80,000 in attorney's fees.

Although the trial court had only addressed the merits of the source-of-income discrimination claims and had not addressed the remaining claims in the complaint, the trial court vacated the previously scheduled pretrial conference and denied as moot a motion filed by the District to continue the pretrial conference, "[b]ecause all issues are now resolved and the case is closed."

## II. Jurisdiction

The District appropriately acknowledges that this court has jurisdiction to address Burrello's challenge to the trial court's order granting injunctive relief. *See* D.C. Code § 11-721(a)(2)(A) (court has jurisdiction to review orders "granting, continuing, modifying, refusing, or dissolving or refusing to dissolve or modify injunctions"). The District argues, however, that this court lacks jurisdiction to otherwise review the trial court's order, because the trial court's order was not final.

*See generally id.* § 11-721(a)(1) (court has jurisdiction to review "final orders and judgments"). We disagree.

This court has held that orders or judgments are final and appealable if they "terminate[] the action in the Superior Court." *Frost v. Peoples Drug Store, Inc.*, 327 A.2d 810, 811 (D.C. 1974), *overruled on other grounds by Rolinski v. Lewis*, 828 A.2d 739, 742 (D.C. 2003); *see, e.g.*, *Ford v. ChartOne, Inc.*, 834 A.2d 875, 878 (D.C. 2003) (defining "final orders and judgments" as "orders and judgments that terminate the litigation") (internal quotation marks omitted). We have also described orders as final if they "dispose[] of the issues in the case before the court so that the court has nothing remaining to do." *United States v. Facon*, 288 A.3d 317, 332 (D.C. 2023) (internal quotation marks omitted). We hold that the trial court's order granting summary judgment to the District and closing the case was final and that this court therefore has jurisdiction to review all of the issues raised in this appeal.

As previously noted, the remedy order states that "all issues are now resolved and the case is closed." Thus, the trial court unambiguously stated that the case was over and that nothing remained for the trial court to do. In our view, such an order is properly treated as final and appealable. *Cf. Moya v. Schollenbarger*, 465 F.3d 444, 450 (10th Cir. 2006) ("[I]f a [trial] court order expressly and unambiguously dismisses a plaintiff's entire action, that order is final and appealable."); *Cox v.*

*United States*, 783 F.3d 145, 148 (2d Cir. 2015) (looking to whether trial court "*intended* to issue a final judgment").

It is true, as the District notes, that the trial court's summary-judgment and remedy orders were focused on the source-of-income counts and did not explicitly address the merits of the remaining counts in the complaint. The trial court's decision to issue an order closing the entire case thus was inadequately explained and apparently erroneous. The trial court may have overlooked the fact that other counts remained, or it may have implicitly concluded, in our view incorrectly, that the relief it was granting rendered the remaining counts moot. In other words, although the trial court said that nothing remained to be resolved and closed the case, in fact there were remaining counts that the trial court did not explicitly address and may have overlooked. In theory, such orders could be treated as nonfinal and nonappealable, because although they purport to fully resolve a case, they do not actually provide an explicit and sufficient rationale for doing so. *Cf., e.g.*, *Cox*, 783 F.3d at 148 (discussing, but ultimately rejecting, theory that "when a district court's order by its terms dismisses a suit in its entirety, but the court's reasoning supports the dismissal of only some of the claims, the judgment is not a final order"). In our view, however, such an approach would be undesirable.

This court has emphasized the importance of clear jurisdictional rules. *See, e.g., D.C. Metro. Police Dep't v. Fraternal Ord. of Police/Metro. Police Dep't Lab.*

*Comm.*, 997 A.2d 65, 71 (D.C. 2010) ("Clarity is to be desired in any statute, but in matters of jurisdiction it is especially important.  Otherwise the courts and the parties must expend great energy, not on the merits of dispute settlement, but on simply deciding whether a court has the power to hear a case.") (internal quotation marks omitted).  A rule that ties finality to the adequacy of the trial court's underlying reasoning in fully resolving a case would undermine that important value, because "it would often be difficult for the losing party to know whether an apparently final order is in fact appealable."  *Cox*, 783 F.3d at 149 (such a rule "would have harmful consequences for our system of justice").

A party who is adversely affected by a trial-court ruling that by its terms unambiguously closes a case but leaves some issues or claims substantively unaddressed, or inadequately addressed, has multiple ways to address the problem.  The party can file a motion seeking post-judgment relief.  *See* Super. Ct. Civ. R. 59(e) (motion to alter or amend judgment), 60 (motion for relief from judgment).  Filing such a motion would provide the trial court with an opportunity to correct any oversight or to more fully explain a ruling.  Alternatively, the party could appeal or cross-appeal.  In this case, the District took no such steps.

For the foregoing reasons, we hold that the trial court's order in this case was final and appealable and that this court has jurisdiction to address all of the issues raised by Burrello.

### III. Source-of-Income Discrimination

"We review orders granting summary judgment de novo." *PHCDC1, LLC v. Evans & Joyce Willoughby Tr.*, 257 A.3d 1039, 1042 (D.C. 2021). "Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). "We review the record in the light most favorable to the party opposing summary judgment." *Id.* at 1042-43. We affirm the trial court's grant of summary judgment to the District on the claims of source-of-income discrimination.

The DCHRA makes it unlawful to, "wholly or partially for a discriminatory reason based on the actual or perceived . . . source of income . . . of any individual,"

> make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to a transaction, or proposed transaction, in real property, or financing relating thereto, which notice, statement, or advertisement unlawfully indicates or attempts unlawfully to indicate any preference, limitation, or discrimination based on [the] . . . source of income . . . of any individual.

D.C. Code § 2-1402.21(a), (a)(5). Monetary assistance provided under 42 U.S.C. § 1437f is explicitly defined as "a source of income." D.C. Code § 2-1402.21(e).

We turn first to whether the advertisements at issue "indicate[d] . . . any preference, limitation, or discrimination" on the basis of source of income. D.C. Code § 2-1402.21(a)(5). We conclude, as a matter of law, that the advertisements indicated a limitation based on source of income. In pertinent part, the

advertisements stated, "[n]ot approved for vouchers." It is undisputed that "vouchers" are a source of income for purposes of the DCHRA. We also think it beyond reasonable debate that the words "[n]ot approved" unambiguously indicated a limitation. Even interpreted in the light most favorable to Burrello, those words indicated the limitation that vouchers could not be used to rent the properties at issue unless some kind of approval were granted. We therefore hold as a matter of law that the advertisements indicated a limitation based on source of income. *See generally, e.g.*, *Washington Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 573 (D.C. 2011) ("[W]here the terms of the document leave no room for doubt, [the document's] effect can be determined as a matter of law.") (ellipses and internal quotation marks omitted).

Burrello argues that the advertisements can reasonably be read to merely indicate (accurately) that approval would be necessary before payment by voucher could be arranged. Although Burrello does not frame the argument this way, Burrello in essence seems to be arguing that, even if the advertisements indicate a limitation, it is lawful to accurately communicate limitations imposed by law. It is true that, to violate the DCHRA, the advertisements must have "unlawfully" indicated a limitation. D.C. Code § 2-1402.21(a)(5). We assume without deciding that accurately communicating limitations imposed by law would not violate the DCHRA. Thus, for example, we assume that a housing provider would not violate

the DCHRA by saying in an advertisement, "Vouchers are welcome but require governmental approval."

The problem for Burrello is that the advertisements did not accurately communicate limitations imposed by law. Rather, the advertisements stated flatly that the properties were not approved for vouchers, without in any way indicating whether, how, or by whom such approval could possibly be obtained. We therefore conclude, as a matter of law, that the advertisements unlawfully indicated a limitation based on source of income.

Finally, Burrello argues that it lacked the requisite mental state to violate the DCHRA. The District was required to prove that Burrello acted "wholly or partially for a discriminatory reason." D.C. Code § 2-1402.21(a). In theory, it is possible that a housing provider with an innocent state of mind could advertise using language that as a matter of law unlawfully indicated a limitation based on source of income. For example, a housing provider could intend to advertise lawfully, but through an inadvertent typing or editing error end up actually sending out an advertisement that unlawfully indicated a limitation based on source of income. We assume without deciding that the housing provider would not be liable for violating the DCHRA in such a case.

In the present case, however, Burrello has acknowledged that the advertisements were intended to communicate to potential tenants that the

apartments were "not eligible for the voucher program." Mr. Burrello further acknowledged that he had never rented to a tenant who paid with a voucher and that when he got inquiries about whether the property had been "approved for vouchers," he said "no." Mr. Burrello acknowledged that the advertisements and his statements to prospective renters were "incorrect" or "wrong." We agree with that acknowledgment. Under the regulations in effect at the time of the advertisements, 14 D.C.M.R. § 5211 et seq. (repealed by emergency and proposed rulemaking at 70 D.C. Reg. 7115 (effective Apr. 12, 2023), and 70 D.C. Reg. 12004 (effective Aug. 10, 2023)), it was not accurate to say flatly to prospective tenants that a given property is not eligible for, or approved for, participation in the voucher program. Rather, the then-applicable regulations established a process under which a tenant locates an apartment, 14 D.C.M.R. § 5211; the landlord and the tenant agree on a proposed lease and submit documents to the District Housing Authority, *id.* § 5212.1; the Housing Authority verifies compliance with program requirements and inspects the property, *id.* § 5212.2, .9; and, if all goes well, the Housing Authority approves the tenancy, *id.* § 5214. The voucher program does have "Housing Quality Standards," *id.* § 5211.1, so it is conceivable that a particular housing accommodation that did not meet those standards could reasonably be described as "ineligible" for the voucher program. Burrello has never contended that its

apartments were ineligible in that sense, and we express no view on how a case involving such a housing accommodation should properly be resolved.

More generally, whatever scope there may be for innocent advertisements that by their terms unlawfully indicate a limitation based on source of income, we conclude that the advertisements in the present case fall outside that scope. Construing the evidence in the light most favorable to Burrello, the best that can be said is that (1) Burrello intentionally sent out advertisements that by their terms unambiguously, inaccurately, and unlawfully indicated that its apartments could not be paid for using vouchers; and (2) Burrello did that because it misunderstood applicable law and thought it was lawful and accurate to communicate that its apartments were not eligible for rent using vouchers. We hold as a matter of law that, even assuming that Burrello acted based on a misunderstanding of the law rather than an outright hostility to the voucher program, Burrello acted with a "discriminatory reason" within the meaning of the DHCRA. *Cf. Feemster v. BSA Ltd. P'ship*, 548 F.3d 1063, 1070-71 (D.C. Cir. 2008) (even if housing provider refused to accept voucher payments because housing provider thought voucher program was burdensome, rather than out of animus toward voucher holders, housing provider nevertheless violated DCHRA; accepting housing provider's explanation as nondiscriminatory purpose "would vitiate [the inclusion of vouchers in the DCHRA's definition of 'source of income'] and the legal safeguard it was

intended to provide"). *See generally, e.g.*, *Robinson v. District of Columbia*, 580 A.2d 1255, 1258 (D.C. 1990) ("With the exception of a few situations not relevant here, professed ignorance of the law is not a valid defense to its violation.").

We are not persuaded by Burrello's remaining arguments to the contrary. First, Burrello argues that the trial court should have applied the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 807 (1973) (plaintiff has burden to establish prima facie case of discrimination; burden shifts to defendant to articulate legitimate, nondiscriminatory reason for action; then burden shifts to plaintiff to show that articulated reason was pretextual or discriminatory in application). The District in this case relied on the direct evidence of discrimination recounted *supra*, rather than on circumstantial evidence. "When a plaintiff [seeks to] prove[] a case of discrimination by direct evidence, application of *McDonnell Douglas* is inappropriate." *Hollins v. Fed. Nat'l Mortg. Ass'n*, 760 A.2d 563, 574 (D.C. 2000) (internal quotation marks omitted).

Second, Burrello argues as a fallback that the District was required at a minimum to show that discrimination was a motivating factor in Burrello's causing the advertisements to be distributed. *See generally, e.g.*, *Hollins*, 760 A.2d at 574-75 (in cases involving direct evidence of discrimination, plaintiff must show that discrimination was motivating factor). For the reasons we have already stated, we conclude as a matter of law that Burrello's conceded intent—to communicate to

potential tenants that the apartments were "not eligible for the voucher program"—is a discriminatory intent in the circumstances of this case.

Third, Burrello appears to rely on the idea that the advertisements described an attribute of the property, rather than an attribute of prospective tenants. We see no material difference, however, between an advertisement stating that "voucher holders may not rent the property" and one stating that "under no circumstances will this property be rentable through payment by voucher." Nor do we see any basis in the text of the DCHRA for the distinction that Burrello suggests.

Fourth, it is true, as Burrello points out, that the applicable regulations at various points use phrases such as "not approved," "not approvable," and "ineligible" in describing the voucher process. *See* 14 D.C.M.R. §§ 5212.11, 5214.16, 5214.17. As previously explained, however, those regulations describe an approval process that begins once a landlord and a tenant have agreed on a proposed lease. The regulations provide no support for the idea that a housing provider can lawfully advertise housing accommodations by flatly stating that the accommodations are not approved for vouchers.

In sum, we conclude that the trial court correctly granted summary judgment to the District on the claims of discrimination based on source of income. We note that the trial court rested its decision in part on the conclusion that the advertisements were "facially discriminatory" and that evidence of subjective intent is irrelevant

with respect to advertisements that are facially discriminatory. We need not and do not address those aspects of the trial court's ruling, instead affirming on the somewhat different analysis explained *supra*, which the parties have had a full opportunity to brief in this court. *See generally, e.g.*, *Franco v. District of Columbia*, 3 A.3d 300, 307 (D.C. 2010) (court has discretion to affirm on legal theory different from that relied upon by trial court).

## IV. Seventh Amendment Right to Jury Trial

Burrello argues that it was denied the Seventh Amendment right to a jury trial. We hold to the contrary. Most broadly, Burrello argues that it was entitled to a jury trial on the issue of liability for source-of-income discrimination. As we have explained, however, the trial court appropriately granted summary judgment to the District on that issue. It is well settled that a trial court does not violate the Seventh Amendment by granting summary judgment where that is appropriate. *E.g.*, *Sibley v. St. Albans Sch.*, 134 A.3d 789, 800-01 (D.C. 2016).

Burrello argues more narrowly that it was entitled to jury trial with respect to the amount of the civil penalty imposed by the remedy order. We conclude that Burrello's argument is foreclosed by the Supreme Court's decision in *Tull v. United States*, 481 U.S. 412, 427 (1987) ("[A] determination of a civil penalty is not an essential function of a jury trial, and . . . the Seventh Amendment does not require a jury trial for that purpose in a civil action.").

Burrello accurately points out that the complaint sought not only a civil penalty but also damages. In seeking remedies on the source-of-income counts, however, the District explicitly stated that it was not seeking damages and was instead seeking equitable relief, a civil penalty, and attorney's fees and costs. The general request for damages in the complaint, which alleged numerous other counts, did not entitle Burrello to a jury trial on the specific issue of the amount of the civil penalty to be imposed with respect to the source-of-income counts.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*